UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
T.S infant by his Father and Natural Guardian THOMAS JOHN STRINGER and THOMAS JOHN STRINGER, Individually

                                     *Plaintiffs*,

     -against-

BAY SHORE UNION FREE SCHOOL DISTRICT, DR. STEVEN J. MALONEY, in his official and individual capacities, DR. LISETTE LORS in her official and individual capacities, and JENNIFER INGOLD,

                                     *Defendants*.
------------------------------------------------------------------------X

Civil Action No. _____

**COMPLAINT**

Plaintiffs demand a trial by jury

       Plaintiffs T.S infant by his Father and Natural Guardian THOMAS JOHN STRINGER and THOMAS JOHN STRINGER, Individually, by their attorneys, THE COCHRAN FIRM, as and for a Verified Complaint herein, respectfully set forth and allege:

<u>**PRELIMINARY STATEMENT**</u>

       1.     This is a civil rights action brought by Plaintiffs against Defendants for events that occurred on premises belonging to, and involving personnel of, Defendant BAY SHORE UNION FREE SCHOOL DISTRICT (hereinafter "BSUFSD"), DR. STEVEN J. MALONEY, in his official and individual capacities, DR. LISETTE LORS in her official and individual capacities, and JENNIFER INGOLD, seeking damages stemming from the Defendants' violation of Plaintiff T.S.'s civil rights. Plaintiff T.S.'s rights were violated by the publication and dissemination of T.S.'s confidential school and/or health records without his or his parents' consent. The release of these confidential records was done negligently and/or intentionally and has caused financial, emotional, and psychological harm to Plaintiffs. The fact that the dissemination of confidential

1

records was done at all was due to negligent training and supervision of Defendant Jennifer Ingold on the part of the District Defendants.

## NATURE OF THE CLAIMS

2. Through this action, Plaintiffs seek redress for the unauthorized disclosure of personally identifiable information ("PII") without consent from of the student and/or the student's parents with rights regarding their child's PII. Plaintiffs herein seek declaratory and injunctive relief as well as compensatory, punitive, and exemplary damages as remuneration from the intentional and negligent conduct of Defendants as well as Defendants' violations of state and federal statutes.

3. The acts and omissions giving rise to this lawsuit began on or about May 15, 2022.

4. Defendants' conduct was knowing, intentional, malicious, wanton, negligent, and/or in reckless disregard of the Plaintiffs' rights.

5. As a result of the Defendants' conduct, the Plaintiffs have suffered and continue to suffer psychological and emotional distress due to the Defendants' acts of releasing Plaintiff T.S.'s PII, including information concerning his Individualized Education Program ("IEP"), his medical diagnoses of Autism Spectrum Disorder, Attention Deficit Hyperactivity Disorder, anxiety, and Auditory Defensiveness, and the symptoms and manifestations of his disabilities on the world wide web site www.middleweb.com ("Middleweb"), on Defendant Jennifer Ingold's ("Ingold") Twitter account, and Middleweb's Facebook page.

6. The Defendant Bayshore Union Free School District personnel, including BSUFSD's director of special education and/or other supervisory personnel failed to promptly remedy the unlawful dissemination of the records after learning about the illegal posting.

7. On information and belief, Defendant BSUFSD had a persistent policy and practice of failing to properly train its staff on the privacy rights of students and the obligations to preserve and safeguard same under state and federal laws.

8. On information and belief, had Defendant BSUFSD adopted a policy of providing training to staff on the privacy rights of students and the obligations to preserve and safeguard same under state and federal laws, Defendant Ingold would not have unlawfully disseminated Plaintiff T.S.'s PII.

9. In the alternative, on information and belief, Defendant Ingold willfully, recklessly, or negligently disclosed Plaintiff T.S.'s PII despite having been trained by Defendant BSUFSD on the privacy rights of students and the obligations to preserve and safeguard same under state and federal laws.

## **JURISDICTION & VENUE**

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343 (1-4) and 2202 as this case involves a federal question based on the Plaintiff T.S, infant's protected rights under The Family Educational Rights and Privacy Act of 1974 (FERPA) (20 U.S.C §1232g; 34 CFR Part 99) and 42 U.S.C. § 1983. The Plaintiffs further invoke the supplemental jurisdiction of this Court to adjudicate state law claims pursuant to 28 U.S.C. § 1367. The matter in controversy exclusive of interest and costs exceeds $100,000 (one hundred thousand dollars).

11. Venue is proper in this district under 28 U.S.C. § 1391(b).

12. The actions complained of herein were and are being committed within Suffolk County, New York.

## PARTIES

### PLAINTIFFS

13. Initials are used throughout this Complaint to preserve the anonymity of the child and their parents, and the confidentiality of their personal information, in conformity with Rule 5.2(a) of the Federal Rules of Civil Procedure, and of the Family Educational Rights and Privacy Act, 20 U.S.C. §1232g.

14. The infant Plaintiff T.S. (hereinafter referred to as "T.S.") is a minor, having been born on XX/XX/2008, and is a current student enrolled at the Bay Shore Union Free School District. T.S. resides in Bay Shore, New York.

15. Plaintiff Thomas John Stringer is the Father and Natural Guardian of T.S. and resides in Bay Shore, New York.

### DEFENDANTS

16. Upon information and belief, the Defendant Bay Shore Union Free School District is a public school district created and existing under Article 31 of the New York Education Law, and the Defendant's principal offices located at 75 West Perkal Street, Bay Shore, County of Suffolk, New York, and is a "program" or "activity" receiving federal financial assistance so as to be covered by Title VI of the Civil Rights Law of 1964, 42 U.S.C. §§ 2000d-d-7.

17. Defendant Dr. Steven J. Maloney ("Dr. Maloney") is the Superintendent of Defendant Bay Shore Union Free School District. On information and belief he is responsible for overseeing the creation and implementation of all of the policies and practices within Defendant BSUFSD as well as the hiring, firing, training, management, direction, and supervision of all employees of Defendant BSUFSD employed in managerial, supervisory, and school leadership positions, including, but not limited to, Defendant Dr. Lisette Lors.

18. At all times relevant hereto Dr. Maloney was aware of 1) Plaintiff T.S.'s right to privacy with respect to his medical and educational records, 2) his obligation under state and federal law to preserve the privacy and confidentiality of such medical and educational records, and 3) his obligation to create, implement, and enforce policies, procedures, and practices to preserve the privacy and confidentiality of student medical and educational records, and 4) his obligation to train the employees under his direction and supervision of their obligation under state and federal law to preserve the privacy and confidentiality of student medical and educational records.

19. Defendant Dr. Lisette Lors ("Dr. Lors,") is the principal of Bay Shore Middle School, the school where Plaintiff T.S. attended at the time his PII was unlawfully exposed, and which employed the teacher, Defendant Jennifer Ingold, that unlawfully disseminated Plaintiff T.S.'s PII.  On information and belief Defendant Dr. Lors is responsible for overseeing the implementation of all policies, procedures, and practices of Defendant BDUFSD within Bay Shore Middle School as well as the hiring, firing, training, management, direction, and supervision of all employees of Bay Shore Middle School, including, but not limited to Defendant Jennifer Ingold.

20. At all times relevant hereto Dr. Lors was aware of 1) Plaintiff T.S.'s right to privacy with respect to his medical and educational records, 2) her obligation under state and federal law to preserve the privacy and confidentiality of such medical and educational records, and 3) her obligation to implement and enforce Defendant BSUFSD's policies, procedures, and practices to preserve the privacy and confidentiality of student medical and educational records within Bay Shore Middle School, and 4) her obligation to train the employees under her direction and supervision of their obligation under state and federal law to preserve the privacy and confidentiality of student medical and educational records.

21. Defendant BSUFSD, Defendant Dr. Maloney, and Defendant Dr. Lors shall hereinafter be referred to as the "District Defendants."

22. Defendant Jennifer Ingold was, and is currently, a teacher at the Bay Shore Union Free School District. At all relevant times hereto the District Defendants were responsible for training, hiring, supervising, disciplining, and retaining the principals, deans of students, teachers, staff, and employees of Defendant BSUFSD and Bay Shore Middle School, including Defendant Ingold. In this capacity, they were acting under the color of law in the course and scope of their duties and functions. Defendant BSUFSD was charged with failure to remedy and prevent Defendant Ingold's misconduct against T.S while attending Bay Shore Middle School.

## ADMINISTRATIVE REMEDIEIS

23. Plaintiffs exhausted all administrative remedies and timely filed their Notice of Claim pursuant to Section 53 of the General Municipal Law on August 10, 2022. Plaintiffs filed their formal complaint under the Family Educational rights and Privacy Act ("FERPA") on August 3, 2022.

## STATUTORY AND REGULATORY FRAMWORK

24. Pursuant to the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C §1232g; 34 C.F.R. Part 99 protects the privacy of student educational records and places restrictions on the release of student's PII.

25. New York has adopted the privacy laws and regulations under Education Law §2-d ("Section 2-d"). Pursuant to Education Law §2-d it protects PII from unauthorized release of personally identifiable information as applied to student data as defined in section 99.3 of Title 34 of the code of federal regulations implementing the family educational rights and privacy act §1232-g of Title 20 of the United States Codes, and, as applied to teacher and principal data as such terms is used in [subd.10] §3012-c of this chapter.

6

26. Education Law § 2-d further pertains to the unauthorized disclosure of student PII and provides parents with rights regarding their child's PII, especially if it pertains to a third-party contractor. According to the requirements of Education Law §2-d the New York State Department of Education ("NYSED") adopting §2-d's Bill of Rights for Data Privacy and Security that authorizes NYSED's Chief Privacy Officer to address parent complaints about possible breaches and unauthorized disclosure of PII.

27. Section 121.1(a) of the regulations of the Commissioner of Educations defining breaches as the "unauthorized, access, acquisition, use or disclosure of student data and/or teacher or principal data by or to a person not authorized to acquire, access, use or receive student data and/or teacher or principal data."

28. Section 121.4 of the regulations of the Commissioner of Education and NYSED's §2-d Bill of Rights for Data Privacy and Security allows parents, eligible students, teachers, principals or other staff of an educational agency to file complaints about possible breaches and unauthorized releases of personally identifiable information. Plaintiff Thomas John Stringer is the parent of T.S., a student who attends a school within BSUFSD and asserts that the T.S.'s PII was disclosed without authorization. BSUFSD's Parents Bill of Rights provides information to parents about filing a complaint with BSUFSD. The BSUFSD does not dispute Plaintiffs' standing to bring this complaint.

29. There is also a privacy right contained in the U.S. Constitution under the 5th and 14th Amendments for a student's medical records and other records related to an IEP. *Hancock v. County of Rennsalear*, 882 F.3d 58 (2nd Cir. 2018).

30. Pursuant to the General Municipal Law §50-e, Plaintiffs filed their Notice of Claim with notice to defendant BAY SHORE UNION FREE DISTRICT SCHOOL within 90-days of the violation.

**FACTS CONCERNING THE MINOR PLAINTIFF**

31. T.S. is 15 years old and in 9th grade. He attends Bay Shore Union Free BSUFSD. At the time of the events detailed herein, he was 14 years old and in 8th grade.

32. T.S. suffers from Autism Spectrum Disorder, Attention Deficit Hyperactivity Disorder, anxiety, and Auditory Defensiveness, diagnosed disabilities which impact his ability to learn and participate in a typical classroom environment without additional assistance and reasonable accommodation. As a result of these diagnoses and additional needs, T.S. was determined to be in need of special education services and was provided an Individualized Education Program ("IEP") to facilitate his education.

33. IEPs are personalized legal documents which contain detailed information about a student's medical, psychological, emotional diagnoses and disabilities and outline the specific special/supplemental needs the student required.

34. A student's IEP (including T.S.'s) and any information contained therein is legally protected by state and federal law and is required to be kept confidential.

35. During the 2021-2022 school year T.S. was a student in Defendant Jennifer Ingold's social studies class.

36. Defendant Ingold, who in addition to being a social studies teacher, is an avid author and public speaker. She is a lead blogger for C3Teachers.org and many of her works have been featured in major education-centered publications such as Social Education, Middle Level Learning, and AMLE Magazine, and MiddleWeb.com She is also a frequent speaker at local, state, regional and national conferences.

37. In that regard, on or about May 18, 2022, Defendant Ingold published an article she wrote entitled "Sealing Civic Readiness in Our Middle Schools" to the educator-centric website MiddleWeb.com (the "Article").

38. In the Article, Defendant Ingold published Plaintiff T.S.'s private, personal information, including information contained in T.S.'s IEP without the consent of T.S. or his father and natural guardian.

39. Specifically, Defendant Ingold published T.S.'s full name, information about the nature and symptoms of his medically diagnosed disabilities, and the accommodations he receives for his disabilities. Moreover, and more appallingly, in the Article Defendant Ingold made disparaging and condescending remarks about T.S. that were stigmatizing.

40. Defendant Ingold disclosed that T.S. was a special education student who had an IEP and also required a one-on-one paraprofessional.

41. Defendant Ingold likewise disclosed medical diagnoses associated with his disabilities such as emotional anxiety, lack of confidence and extreme shyness.

42. Following the publication of the Article, Defendant Ingold made a social media post to the social media platform Twitter (colloquially referred to as a "Tweet") sharing the link to her, on information and belief, more than 1,000 followers.

43. Defendant Ingold's "tweets" were then shared or "retweeted" to others. In addition, a link to the Article was posted in a tweet made by Twitter user @middleweb, which on information and belief is the Twitter account belonging to MiddleWeb.com, the site on which the Article was published.

44. Furthermore, the Article was discovered by the National Council for Social Studies who shared it in its "SmartBrief" newsletter (the "Newsletter") as the lead article.

45. On information and belief, between the Tweets, Retweets, and the Newsletter, T.S.'s PII, IEP information, and Defendant Ingold's stigmatizing remarks were shared to tens of thousands of people without the knowledge or consent of T.S. or his parents.

46. On information and belief, the Defendant School District's director of special education was made aware that Defendant Ingold published the Article, however the Defendants didn't take any meaningful actions with respect to the posting of the Article.

47. On May 25, 2022, the Defendant BSUFSD was made aware of the Article.

48. It wasn't until June 9, 2022, that the "link" was made inaccessible to the public, 15 days from the publication of T.S.'s name, IEP and stigmatizing private information.

49. The Defendant BSUFSD admitted that a FERPA violation occurred.

50. District failed to comply with §121.1(a) of the regulation in that they failed to report the incident within the ten (10) calendar days from the incident resulting in T.S sustaining emotional distress, ridicule, humiliation, embarrassment, and stigmatization.

51. There was no justification for the publishing of T.S.'s protected medical and educational records.

52. The publication was done solely for the advancement of Defendant Ingold's professional career and her financial well-being.

53. The Defendant School District and Defendant Ingold had no legitimate reason to release T.S.' protected information.

**FIRST CAUSE OF ACTION**

42 U.S.C. § 1983
As and Against All Defendants

54. Plaintiffs repeat and re-allege the allegations contained in the previous paragraphs as if fully set forth herein.

55. Under the 5th and 14th Amendment, T.S. had a constitutional right to privacy with respect to his educational records, which include, but are not limited to his IEP which contains his medical records, diagnoses, learning disabilities, as well as emotional and psychological impairments.

56. The publishing of his name, medical diagnoses, and other personally identifying information was humiliating as they detailed T.S.'s medical and psychological conditions and labeled him as a "special ed" student.

57. The disclosure of this information has caused psychological, emotional, and financial injury to the plaintiffs including the payment of medical expenses to treat the injuries and the cost of efforts to assist in the removal of the information from the public domain.

58. The publication of this information was deliberately indifferent to T.S.'s right to privacy as it was done knowingly, intentionally and without any legitimate Governmental purpose.

59. As a direct and proximate result of Defendants' violation of Plaintiffs' rights, Plaintiffs have suffered both pecuniary and emotional damages in amount to be determined at trial but in no event less than one million dollars ($1,000,000.00).

## SECOND CAUSE OF ACTION

*Monell* under 42 U.S.C. § 1983
As and Against the District Defendants

60. Plaintiffs repeat and re-allege the allegations contained in the previous paragraphs as if fully set forth herein.

61. Education Law § 2-d and § 121.7 of the regulations of the Commissioner of Education require annual training on the state and federal laws that protect student PII.

62. At all relevant times, Defendant BSUFSD maintained a policy, practice, and/or custom of failing to provide the statutorily required training to its employees, including Defendant

Ingold, concerning their obligations to maintain the privacy of student educational records including medical records and diagnoses.

63. Defendant BSUFSD similarly had a policy, practice and/or custom of failing to discipline employees who violated their duty to protect confidential personally identifying student information from public disclosure.

64. As Superintendent of Defendant BSUFSD Dr. Maloney was responsible for the designing, adopting, implementing, and enforcing Defendant BSUFSD's policy, practice, and/or custom of failing to provide the statutorily required training to its employees, including Defendant Ingold, concerning their obligations to maintain the privacy of student educational records including medical records and diagnoses.

65. As Superintendent of Defendant BSUFSD Dr. Maloney was responsible for the designing, adopting, implementing, and enforcing a policy, practice, and/or custom of failing to discipline employees who violated their duty to protect confidential personally identifying student information from public disclosure.

66. As Principal of Bay Shore Middle School, Dr. Lors was responsible for implementing and enforcing BSUFSD's a policy, practice, and/or custom of failing to provide the statutorily required training to its employees, including Defendant Ingold, concerning their obligations to maintain the privacy of student educational records including medical records and diagnoses within Bay Shore Middle School.

67. As Principal of Bay Shore Middle School, Dr. Lors was responsible for implementing and enforcing BSUFSD's a policy, practice, and/or custom of failing to discipline employees who violated their duty to protect confidential personally identifying student information from public disclosure within Bay Shore Middle School.

68. This policy, practice and/or custom was deliberately indifferent to the due process rights of individuals like T.S. who have constitutionally and statutorily protected rights to privacy in their confidential medical and educational records.

69. In adopting and implementing a policy, practice, and/or custom of failing to provide the statutorily required training to its employees, including Defendant Ingold, concerning their obligations to maintain the privacy of student educational records including medical records and diagnoses BSUFSD was deliberately indifferent to the due process rights of individuals like T.S. who have constitutionally and statutorily protected rights to privacy in their confidential medical and educational records.

70. In designing, adopting, and implementing Defendant BSUFSD's policy, practice, and/or custom of failing to provide the statutorily required training to its employees, including Defendant Ingold, concerning their obligations to maintain the privacy of student educational records including medical records and diagnoses Dr. Maloney, as Superintendent of BSUFSD, was deliberately indifferent to the due process rights of individuals like T.S. who have constitutionally and statutorily protected rights to privacy in their confidential medical and educational records.

71. In adopting and implementing BSUFSD's a policy, practice, and/or custom of failing to provide the statutorily required training to its employees, including Defendant Ingold, concerning their obligations to maintain the privacy of student educational records including medical records and diagnoses within Bay Shore Middle School Dr. Lors, as Principal of Bay Shore Middle School, was deliberately indifferent to the due process rights of individuals like T.S. who have constitutionally and statutorily protected rights to privacy in their confidential medical and educational records.

72. As a direct and proximate result of this policy, practice, and/or custom of failing to educate and train its employees about their obligations to maintain the privacy of student educational records, Plaintiff T.S.'s right to privacy was violated.

73. As a direct and proximate result of this policy, practice, and/or custom of failing to educate its employees of their obligations to maintain the privacy of student educational records under state and federal law and the United States Constitution and the resultant conduct of Defendant Ingold, Plaintiffs have suffered both pecuniary and emotional damages in amount to be determined at trial but in no event less than one million dollars ($1,000,000.00).

## THIRD CAUSE OF ACTION

Negligent Training and Supervision of Employees
As and Against the District Defendants

74. Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs as if fully set forth herein.

75. Defendant Ingold, who in addition to being an eighth-grade social studies teacher, is an avid author and public speaker. She is a lead blogger for C3Teachers.org and may of her works have been featured in major education-centered publications such as Social Education, Middle Level Learning, and AMLE Magazine, and MiddleWeb.com She is also a frequent speaker at local, state, regional and national conferences.

76. In her article and blog posts, and on information and belief during her speaking appearances, Defendant Ingold makes anecdotal references to students and their activities and often refers to students by name.

77. On information and belief the District Defendants at all relevant times aware of Defendant's blogging and speaking activities, as well as Defendant Ingold's propensity for making

anecdotal references to students and their activities as well as her propensity for referring to students by name in written publications.

78. Accordingly, the District Defendants had an obligation to provide Defendant Ingold with initial and regular refresher training on her statutory privacy obligations under *inter alia* FERPA. Additionally, the District Defendants had an obligation to monitor Defendant Ingold's publications to ensure that she was remaining in compliance with her statutory privacy obligations under *inter alia* FERPA.

79. These obligations notwithstanding, the District Defendants failed to properly train Defendant Ingold on her statutory privacy obligations under *inter alia* FERPA and failed to adequately supervise Defendant Ingold's compliance with her statutory privacy obligations under *inter alia* FERPA with respect to her publications.

80. As a direct and proximate result of the District Defendants' failure to properly train and supervise Defendant Ingold, Plaintiffs have suffered both pecuniary and emotional damages in amount to be determined at trial but in no event less than one million dollars ($1,000,000.00)

## FOURTH CAUSE OF ACTION

Common Law Negligence
As and Against Defendant Jennifer Ingold

81. Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs as if fully set forth herein.

82. Defendant Ingold as Plaintiff T.S.'s teacher owed Plaintiffs a duty of care to maintain the privacy and confidentiality of Plaintiff T.S.'s personally identifying information including his IEP, medical, and mental health records.

15

83. Defendant Ingold breached that duty of care by publishing Plaintiff's PII in the Article, and further exacerbated said breach of said duty of care by disseminating the Article via Twitter.

84. As a direct and proximate result of her breach of her duty of care to maintain Plaintiff T.S.'s PII, Plaintiffs have suffered both pecuniary and emotional damages in an amount to be determined at trial, but in no event less than one million dollars ($1,000,000).

## FIFTH CAUSE OF ACTION

Gross Negligence
As and against Defendant Jennifer Ingold

85. Plaintiffs repeat and reallege the allegations contained in the preceding Paragraphs as if fully set forth herein.

86. Defendant Ingold owed Plaintiffs a duty of care to maintain the privacy and confidentiality of Plaintiff T.S.'s PII.

87. Defendant Ingold breached that duty of care by publishing Plaintiff's PII in the Article, and further exacerbated said breach of said duty of care by disseminating the Article via Twitter.

88. In breaching her duty of care to Plaintiffs, Defendant Ingold acted in a manner that smacks of intentional wrongdoing and/or evinces a reckless disregard for Plaintiffs' rights.

89. Due to the reckless, wanton, and grossly negligent nature of Defendant Ingold's conduct, Plaintiffs are entitled to punitive damages in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000).

## CPLR SECTION 1602 EXCEPTIONS

90. These actions fall within one or more of the exceptions set forth in CPLR 1602. Plaintiffs defer all issues of law to the Court for resolution at the time of trial.

91. Pursuant to CPLR 1602(2)(iv), Defendants are jointly and severally liable for all of Plaintiffs' damages herein, including but not limited to Plaintiffs' non-economic loss, irrespective of the provisions of the CPLR 1601, by reason of the fact that Defendants owed the Plaintiffs a non-delegable duty of care.

92. Pursuant to CPLR 1602, Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiffs' non-economic loss, irrespective of the provisions of CPLR 1601, by reason of the fact that Defendants acted with reckless disregard of the safety of others.

93. Pursuant to CPLR 1602(2)(iv), the Defendants are jointly and severally liable for all of Plaintiffs' damages, including but not limited to Plaintiffs' non-economic loss, irrespective of the provisions of the CPLR 1601, by reason of the fact that said Defendants are vicariously liable for the negligent acts and omissions of each other and/or others who caused or contributed to the Plaintiffs' damages.

## **CONCLUSION**

**WHEREFORE,** the Plaintiffs demand judgment as follows:

A. Awarding damages for economic and emotional injuries as well as interest, costs, disbursements, common law, statutory, compensatory, exemplary and punitive damages, pre-judgment interest pecuniary and non-pecuniary damages and such other and further relief as to this Court deems just and proper; and

B. Awarding counsel fees, costs and disbursements of this action, together with such other and further equitable relief which as to this Court may deem just and proper.

[SIGNATURE PAGE TO FOLLOW]

17

Dated: April 28, 2023
      New York, NY

                                          THE COCHRAN FRIM

                                          ___/s/ Derek S. Sells, Esq._____
                                          Derek S. Sells, Esq. (DSS 8891)
                                          Attorney for Plaintiffs
                                          55 Broadway, 23rd Floor
                                          New York, New York 10006
                                          T: (212) 553-9215
                                          dsells@cochranfirm.com